LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
LAURA M. JIMENEZ, Esq. SBN 237273
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
 South Pasadena, CA 92030
Tel: (626) 799-9375
Fax: (626) 799-9380

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Marlene Orozco; Mark Carrillo, Jr; Joshua Carrillo; M.M.C., J.J.C., A.F.C.,** By And Through Their Guardian Ad Litem, Marlene Orozco**;**<br><br>              Plaintiffs,<br><br>v.<br><br>**County of Los Angeles, Sheriff Alex Villanueva, Does 1 Through 20, Inclusive**<br><br>          Defendants. | Case No.:  2:21-cv-5481<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **DEPRIVATION OF CIVIL RIGHTS, 42  U.S.C. § 1983, WRONGFUL DEATH;**<br>2.  **DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983, *MONELL* VIOLATIONS;**<br>3. **DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983, SUPERVISOR LIABILITY;**<br>4. **NEGLIGENCE;**<br>5. **VIOLATION OF GOVERNMENT CODE §845.6 – FAILURE TO PROVIDE IMMEDIATE MEDICAL CARE; and**<br>6. **VIOLATION OF THE ADA, 42 U.S.C. § 12101, and CALIFORNIA UNRUH ACT, CIVIL CODE §51.**<br><br><br>**DEMAND FOR JURY TRIAL** |

1

# I.    JURISDICTION AND VENUE

1.     This is a lawsuit for monetary damages and is brought pursuant to 42 U.S.C. section 1983, et seq., and the Eighth and Fourteenth Amendments to the United States Constitution, for wrongful death and violation of constitutional rights by Defendants County of Los Angeles, Sheriff Alex Villanueva, and Los Angeles County Sheriff's Department deputies and Los Angeles County jail staff. Jurisdiction is founded on 28 U.S.C. sections 1331 and 1343 and the aforementioned statutory and Constitutional provisions. State law claims for wrongful death, negligence, and failure to summon medical care are alleged as well. Plaintiffs invoke the Court's supplemental jurisdiction pursuant to 28 U.S.C. section 1367(a) to consider the state law claims.

2.     On or about March 8, 2021, each Plaintiff timely and properly filed an administrative claim with the County of Los Angeles, in compliance with the requirements of Section 910 of the California Government Code. On or about April 7, 2021, each Plaintiff's claim was denied in its entirety.

3.     Plaintiffs allege that this complaint was filed within the statutory requirements as mandated by California law for claims against governmental entities and agents.

# II.    PARTIES

4.     At all times relevant, this action arises from the preventable death of Mark Anthony Carrillo (hereinafter "DECEDENT"), who at all times mentioned herein was an individual residing in the County of Los Angeles, State of California.

5.     Plaintiff Marlene Orozco, is the wife of Decedent, Mark Anthony Carrillo, who at all times mentioned herein was an individual residing in the County of Los Angeles, State of California, and sues both in her individual capacity as the wife of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT. Plaintiff Marlene Orozco seeks both survival and wrongful death damages.

6.     Plaintiff Mark Carrillo, Jr., is the son of Decedent Mark Anthony Carrillo, who at all times mentioned herein was an individual residing in the County of Los

Angeles, State of California, and sues both in his individual capacity as the son of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT. Plaintiff Mark Carrillo, Jr. seeks both survival and wrongful death damages.

7.    Plaintiff Joshua Carrillo, is the son of Decedent Mark Anthony Carrillo, who at all times mentioned herein was an individual residing in the County of Los Angeles, State of California, and sues both in his individual capacity as the son of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT. Plaintiff Joshua Carrillo seeks both survival and wrongful death damages.

8.    Plaintiff M.M.C., is the daughter of Decedent Mark Anthony Carrillo, who at all times mentioned herein was an individual residing in the County of Los Angeles, State of California, and sues both in her individual capacity as the daughter of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT. Plaintiff M.M.C. seeks both survival and wrongful death damages.

9.    Plaintiff J.J.C., is the daughter of Decedent Mark Anthony Carrillo, who at all times mentioned herein was an individual residing in the County of Los Angeles, State of California, and sues both in her individual capacity as the daughter of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT. Plaintiff J.J.C. seeks both survival and wrongful death damages.

10.    Plaintiff A.F.C., is the son of Decedent Mark Anthony Carrillo, who at all times mentioned herein was an individual residing in the County of Los Angeles, State of California, and sues both in his individual capacity as the son of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT. Plaintiff A.F.C. seeks both survival and wrongful death damages.

11.    On information and belief, Plaintiffs allege that at all relevant times, Defendant COUNTY OF LOS ANGELES, (hereinafter "COUNTY"), was and is a municipal corporation, existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its

various agents and agencies, including but not limited to the Los Angeles County Sheriff's Department, Men's Central Jail, the Los Angeles County Department of Mental Health, and the Los Angeles County Medical Services Bureau are their agents and employees. At all times relevant, COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the Los Angeles County Sheriff's Department, Men's Central Jail, the Los Angeles County Department of Mental Health, and the Los Angeles County Medical Services Bureau, and that their employees and agents complied with the laws of the State of California and the United States. COUNTY purposely conducts substantial business activities in the State of California.

12.    At all times relevant, COUNTY was the employer of the Defendant, Sheriff ALEX VILLANUEVA and DOES 1-20, inclusive.

13.    Defendant Sheriff-ALEX VILLANUEVA ("VILLANUEVA") is sued herein in his official and individual capacity because as the Los Angeles County Sheriff, Defendant, Alex Villanueva was and is acting under color of law within the course and scope of his duties as a sheriff and/or a managerial, supervisorial, and policymaking employee for the Defendant, COUNTY and with the complete authority and ratification of his principal, Defendant COUNTY.

14.    Defendant VILLANUEVA is the Sheriff for Los Angeles County and in charge of the Los Angeles County Jail, including Men's Central Jail ("MCJ"), where DECEDENT resided at the time of his death. By California law, the Sheriff is answerable for the safekeeping of inmates in his custody. Cal. Gov't Code §§26605, 26610; Cal. Pen. Code §4006. Sheriff VILLANUEVA was responsible for the management and control of all Los Angeles County Jails, was responsible for the administration of MCJ; for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the MCJ, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff, and supervisors; and for the implementation of policies and procedures at MCJ. He was responsible for the care, custody and control of all inmates housed in MCJ.  Sheriff

VILLANUEVA was regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the jails, jail suicides, and other violations involving housing care, mental health care, and the treatment of inmates at MCJ. Pursuant to California law and his duties as the Sheriff of Los Angeles County, Sheriff VILLANUEVA is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivation which this Complaint alleges, or for conduct that showed reckless or callous indifference for others. Sheriff VILLANUEVA's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on DECEDENT.

15.    Plaintiffs are informed and believe and thereon allege that Defendants sued herein as DOES 1 through 20, inclusive, were employees of the County of Los Angeles, including but not limited to deputies and civilian staff of the Los Angeles County Sheriff's Department, employees of the Department of Mental Health, and employees of the Medical Services Bureau, and/or final policy makers for the COUNT, and were at all relevant times acting in the course and scope of their employment and agency with the Defendant COUNTY, and the acts and omissions of the said DOE Defendants were the proximate cause of the injuries and losses suffered by Plaintiffs and the death of DECEDENT. DOES 1-20 were acting within the complete authority and ratification of their principal, Defendant COUNTY.   Plaintiffs are currently unaware of the true identities of these DOE Defendants, but will amend the Complaint to name them with their true names as soon as the same is ascertained. Plaintiffs allege that in doing the acts and omissions herein alleged, said DOE Defendants were employed as employees, agents, or servants of the Defendant COUNTY.

16.    On information and belief, at all times relevant, the individual Defendants, including DOES 1-20, were residents of Los Angeles County.

### III.  GENERAL ALLEGATIONS

17.    Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

18.    Each paragraph of this complaint is expressly incorporated into each cause of action which is a part of this Complaint.

19.    The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiffs.

### IV.  FACTUAL ALLEGATIONS

### A. BACKGROUND

20.    On January 23, 2021, Mark Anthony Carrillo ("DECEDENT") was 38 years old. He was married to Plaintiff, Marlene Orozco and he had five children, Plaintiffs Mark Carrillo, Jr. (19), Joshua Carrillo (18), M.M.C. (12), J.J.C. (11) and A.F.C. (2). Mr. Carrillo played a significant role in raising all of his children. Even after he began demonstrating signs of severe mental illness, he remained emotionally connected to all of his children.

21.    On or between 2018-2019, DECEDENT was diagnosed with mental illness, including but not limited to a diagnosis of schizophrenia and had a known history of prior psychiatric hospitalizations.

22.    On or about December 23, 2020, DECEDENT was remanded to the custody of the Los Angeles Sheriff's Department ("LASD") and he was housed in the Men's Central Jail. Prior to DECEDENT's December 23, 2021 incarceration at the Los Angeles County Men's Central Jail, DECEDENT had been incarcerated approximately seven (7) times from approximately 2019-2020 and during each of those incarcerations, he was housed at the Los Angeles County Twin Towers Correctional Facility ("TTCF") due to

his extensive history with mental illness and prior suicide attempts. During his prior incarcerations at TTCF, DECEDENT had attempted suicide prior on multiple occasions. During his incarceration from December 23, 2020 to January 23, 2021, DEFENDANTS knew or should have known that DECEDENT was experiencing delusions and paranoia and he was not taking his medication.

23. On January 23, 2021, DECEDENT was found hanging from the bars of his cell door and multiple pieces of cloth and plastic were noted to be tied in various places around the bars of the cell door. According to the County of Los Angeles, Department of Coroner Investigator's Report, surveillance footage viewed by the deputies, approximately 20 minutes prior to discovery of his body, the decedent's hands and fingers can be seen fidgeting through the bars, appearing consistent with him tying the ligature. As a result, Mark Anthony Carrillo was pronounced dead at the scene on January 23, 2021 at 1101 hours.

24. On information and belief, there was woefully inadequate supervision of DECEDENT by Defendants COUNTY OF LOS ANGELES and DOES 1-20. Further, having the authority to make a medical housing assignment, DEFENDANTS, failed to house DECEDENT appropriately. DECEDENT should have been more appropriately housed in the Twin Towers Correctional Facility due to his gravely disabled mental status and inability to care for himself but instead, Defendants COUNTY OF LOS ANGELES and DOES 1-20, assigned him to Men's Central Jail ("MCJ"). At MCJ, he was placed in general population and just prior to his death, he was moved into a single-man cell within MCJ, where DECEDENT had no additional monitoring or supervision.

25. Defendants COUNTY OF LOS ANGELES, and DOES 1-20, did not adequately assess DECEDENT to determine if he could be safely housed in the Men's Central Jail. DECEDENT's condition required placement in a mental health facility but Defendants failed to request placement at the TTCF and failed to adequately determine the appropriate unit that DECEDENT should have been assigned to within TTCF to ensure that DECEDENT's condition could be appropriately monitored and treated.

26.     Additionally, Defendants COUNTY OF LOS ANGELES and DOES 1-20, continued DECEDENT's housing assignment in MCJ although it is painstakingly clear that Defendants knew DECEDENT suffered from severe mental health illness and had a history of prior suicide attempts and based on those conditions alone, Defendants were required to place DECEDENT in appropriate housing at the TTCF.

27.     Defendants COUNTY OF LOS ANGELES and DOES 1-20 housing assignment for DECEDENT did not address the known and obvious suicidal ideations DECEDENT was harboring. DECEDENT'S serve psychiatric illnesses, required him to take medication and Defendants COUNTY OF LOS ANGELES and DOES 1-20 were aware that the medication was necessary to control his psychiatric illness but they failed to ensure that DECEDENT was taking his medication. Death records confirm that DECEDENT was never prescribed or given any medication while incarcerated at MCJ.

28.     Despite MCJ staff knowing that DECEDENT had an extensive history with suicide attempts, combined with his disoriented behavior, delusions, hallucinations and having not been given his medications, DECEDENT was inexplicably housed at MCJ and not at the TTCF mental health facility. In short, DECEDENT had a known mental health illness and known suicidal ideations, he was not given medication, nor was treated properly by a psychiatrist. He was simply left to languish.

29.     It is these individuals' deliberate indifference to DECEDENT's serious medical needs that led to his death. Further, the failure of Defendants COUNTY OF LOS ANGELES and DOES 1-20, to implement adequate protocols and training was also a substantial factor leading to DECEDENT's death; these failures form the basis for the Fourteenth Amendment and wrongful death claims alleged herein.

30.     County suicide prevention policies delineate certain triggers staff should be aware of that indicates a potential suicide attempt. DECEDENT displayed several of these triggers such as severe mental illness and previous suicide attempts. Given DECEDENT's imminent suicidal ideations, depression and mental illness, it is glaringly

obvious that Decedent should have been monitored, evaluated, medicated, and properly housed upon intake.

**B. POLICIES AND PROCEDURES OF THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, CUSTODY DIVISON, REGARDING THE HANDLING AND HOUSING OF SUICIDAL INMATES**

31.     On information and belief, inmates who report suicidal thoughts, engage in self-injurious behavior or are thought to be a potential suicide risk shall be assessed, observed and provided interventions that lessen the likelihood of a suicide. Crisis intervention services responsive to crises such as suicidal ideation/behaviors, imminent distress, or significant worsening of mental health status shall include but not be limited to transfer to mental health housing or a higher level of mental health care, administration of psychotropic medications, clinical interventions and special observation.

32.     Jail Mental Health Services Suicide Prevention Policy No. 70.7, requires that: "Particular attention shall be paid to intensity and frequency of ideation, the presence of a plan and the presence of command hallucinations and/or paranoid delusions. Careful consideration should be used to determine if the client has a delineated plan to harm her/himself as opposed to a way in which one could possibly harm oneself. A delineated plan is of greater concern and indicates higher risk that should be clinically addressed appropriately." Despite the above, Defendants COUNTY OF LOS ANGELES and DOES 1-20  did not ask DECEDENT if he had a specific plan to carry out a suicide attempt despite his delusions and paranoia.

33.     On information and belief, Risk Precaution is the level of watch, observation or measures utilized to identify and safely maintain clients who require heightened observation and daily re-evaluation and require admission to High Observation Housing areas but are not considered to pose an imminent risk of suicide. Individuals in Risk Precaution shall be assessed daily by a clinician or psychiatrist and reviewed weekly by their treatment team as to their ongoing risk. In determining whether to assign an inmate to risk precaution, clinicians are expected to consider prior suicide attempts, suicide

attempts made during current incarceration, prior psychiatric hospitalizations, and whether the inmate has been taking their medication. Despite DECEDENT's mental illness, prior suicide attempts while in and out of custody, his prior psychiatric hospitalizations and his failure to take medication, DECEDENT was not placed in Risk Precaution.

34.     On information and belief, Mental Health High Observation Housing ("HOH") areas are for clients that require an intensive level of observation and care and/or safety precautions but do not require hospitalization. High Observation Housing allows inmates to be monitored on a more frequent basis by both deputies and doctors, some as much as every 7.5 minutes if they were a danger to themselves, or especially if they attempted to kill themselves one to two days prior.

35.     Additionally, clients in HOH areas shall be offered ten hours per week structured therapeutic or programmatic time unless individually clinically contraindicated and documented in the client's Medical Record. Specifically, anyone in HOH had the opportunity to be part of a group on a daily basis, to discuss mental illness and self-esteem topics and basic living skills. Despite DECEDENT's mental health illness, prior suicide attempts while in and out of custody, his prior psychiatric hospitalizations and his failure to take medication, Defendants, COUNTY OF LOS ANGELES and DOES 1-20, did not place DECEDENT in Mental Health High Observation Housing.

36.     On information and belief, suicidal detainees shall be housed in two persons to a cell and, whenever possible, in a specified HOH area, in order to deter self-injurious behavior and facilitate observation and treatment interventions. When assigned to the HOH Area when the detainee requires mitigation of suicide risk and the reduction of symptoms frequently association with isolation, clinicians shall consider recommending housing two High Observation clients together whenever safe and clinically appropriate. The goal is to have clinically appropriate HOH clients in two-person cells unless there is clear indication documented in the record for recommending single-person housing.

Although DECEDENT was suicidal and at risk of self-injurious behavior, he was housed in a single-man cell.

37. On information and belief, in January 2021, the Forensic In-Patient Program ("FIP"), was the same as the Correctional Treatment Center. Clients who are imminently suicidal and require admission to the Mental Health Unit of the Correctional Treatment Center ("MHU CTC"), are placed on suicide watch on a 72-hour hold, in accordance with Welfare and Institutions Code, Section 5150. The MHU CTC houses clients/inmates that present an acute danger to self or others or grave disability due to a mental illness and require inpatient care. Patients admitted to the MHU CTC shall be assessed face-to-face at a minimum of every shift by nursing staff and daily by a licensed member of the interdisciplinary and receive observation checks by Custody every 15 minutes and by mental health staff every 30 minutes.

38. Also, someone housed in the FIP can be forced to take medication. The FIP, is a hospital for patients who are schizophrenic, they are not taking medication, they are really declining in their mental illness, their cells are trashy, they don't take care of themselves, and they are putting themselves in a situation that they need to be observed closer.

39. Additionally, Los Angeles County Sheriff's Department Custody Division Manual 4-11/030.00, Inmate Safety Checks provides that California Code of Regulations, Title 15, section 1027, requires that all inmates in High Observation Housing shall be visually checked at least every 15 minutes to ensure their safety and welfare, and that Department policy requires more frequent safety checks of some inmates. All safety checks shall be staggered to minimize the ability of inmates to plan around anticipated checks and shall not be completed precisely and repeatedly on the interval.

40. On information and belief, Defendants COUNTY OF LOS ANGELES and DOES 1-20 did not conduct ongoing monitoring and assessment to ensure that DECEDENT did not require transfer to FIP and that he could continue to be safely housed in Men's Central Jail. Defendants, fully on notice of the need for such close,

ongoing monitoring and assessment given DECEDENT's status as mentally ill and suicidal, requiring close observation, his pattern of unpredictable and desperate behavior, and circumstances indicating a high risk for psychiatric decompensation in custody, Defendants failed to conduct an appropriate mental health evaluation of DECEDENT and failed to provide DECEDENT with proper housing.

41.     On information and belief, Defendants COUNTY OF LOS ANGELES and DOES 1-20 failed to take well-established, suicide and self-harm prevention measures, the need for which they were on notice of given behavior indicating a clear decompensation of DECEDENT's mental health status during his incarceration at Men's Central Jail.  Knowing that DECEDENT had been experiencing suicidal ideations and knowing he had been suffering from severe psychiatric illnesses, Defendants COUNTY OF LOS ANGELES and DOES 1-20 intentionally and callously assigned DECEDENT to Men's Central Jail knowing that DECEDENT would not receive additional monitoring, medical attention, or suicide precautions. This housing assignment is explicitly against county policy.

42.     Defendants, COUNTY OF LOS ANGELES, and DOES 1-20 refused to provide proper supervision to DECEDENT, who was in their custody as an inmate in the Men's Central Jail facility. Specifically, on January 23, 2021, because of the failure to provide proper supervision, Decedent was found dead in his jail cell while he was alone in the Men's Central Jail. Decedent had had prior issues of mental health and yet was not supervised closely and was not placed in appropriate housing where the deputies and jail staff could properly supervise DECEDENT.   The failure to properly supervise DECEDENT, who was in their custody, was caused by the negligent failure of the COUNTY in the hiring, retention, and training of its Sheriff Deputies and other COUNTY staff; by the negligent failures of the COUNTY in failing to train its Sheriff Deputies and jail staff to identify indicators and behavior of persons in need of immediate medical care and persons with mental health issues; and by failing to train its Sheriff Deputies and other jail staff to properly identify and communicate to superiors the

medical/mental health needs of those persons in custody who required immediate medical/mental health care, such as DECEDENT, Mark Anthony Carrillo herein.

43. Further, Plaintiffs are informed and believe that Los Angeles County Sheriff's Deputies and/or Los Angeles County medical staff failed to relay critical medical information to the Los Angeles County Sheriff's Deputies. Had Defendants COUNTY OF LOS ANGELES and DOES 1-20 informed that DECEDENT had previously attempted suicide and had been suffering from severe psychiatric illness, DECEDENT would have been housed in the appropriate unit of the Twin Towers Correctional Facility pursuant to county policy however, Defendants COUNTY OF LOS ANGELES and DOES 1-20, were deliberately indifferent to DECEDENT's serious medical needs.

## C. **THE COUNTY OF LOS ANGELES COUNTY SHERIFF, DEPARTMENT OF MENTAL HEALTH, AND MEDICAL SERVICES BUREAU'S POLICIES, CUSTOMS AND PRACTICES VIOLATING THE RIGHTS OF PERSONS WITH MENTAL ILLNESS, VIOLATED THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BY FAILING TO PROVIDE ADEQUATE MENTAL HEALTH SERVICES AND ADEQUATE PROTECTION TO MARK ANTHONY CARRILLO**

44. On September 5, 1997, the United States Department of Justice ("DOJ") advised Ms. Joanne Sturges, the Los Angeles County Executive, the results of its June 6, 1996 investigation into the mental health conditions of the Los Angeles County Jails pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§1997 et seq. The DOJ concluded that "unconstitutional conditions exist at the Los Angeles County Jail, including a deliberate indifference to inmates serious mental health needs." After itemizing multiple unconstitutional conditions pertaining to the treatment of inmates with mental health conditions, the DOJ made Recommended Remedial Measures which

specifically focused on suicide prevention, including but not limited to: "recognizing and responding to indications of suicidal thoughts" and "proper suicide observation."

45.     On December 19, 2002, the Los Angeles County and the United States entered into a Memorandum of Agreement Regarding Mental Health Services at the Los Angeles County Jail ("MOA"), which was entered into to avoid potential litigation concerning the mental health services at the jail. Among the provisions in the agreement is the acknowledgment that:

a. the "Sheriff of Los Angeles County, and the Los Angeles County Sheriff's Department of Mental health are responsible for overseeing and/or providing mental health services to the inmates at the Jail;"

b. the "Mental health staff shall make weekly rounds in locked down non-mental health housing modules (e.g. administrative segregation, disciplinary segregation) at the Jail to identify inmates who may have been missed during screening or who have decompensated while in the Jail;"

c. "the County shall provide adequate mental health treatment to all inmates determined to be mentally ill;"

d. "the County shall ensure adequate therapy and counseling for all mentally ill inmates who need such care. This includes adequate space for treatment, adequate staff to provide treatment, and adequate therapeutic programming;"

e. "the County shall ensure that inmates observed to be potentially suicidal receive appropriate crisis intervention, (including placement in a safe setting and evaluations in a timely manner), by qualified mental health professional to determine whether and what level of suicide observation is required;"

f. "the County shall provide sufficient mental health staffing to ensure timely access to adequate mental health treatment and meet the obligations and provide the services listed in this Agreement;"

g. "the County shall implement mandatory orientation and continuing competency based in-service training for correctional staff in the identification

and custodial care of mentally ill inmates, including, but not limited to: (b) recognizing and responding to indications of suicidal thoughts, (c) proper suicide observation, and (f) response to mental health crises, including suicide intervention . . .the County shall provide annual refresher training;" and,

h. "Staff shall not be permitted to physically, verbally or mentally abuse inmates with mental illness."

46.     On September 5, 2013 –the Department of Justice gave notice to William T. Fujioka, Chief Executive Officer of the County of Los Angeles, that the DOJ was going to complete its assessment of the Los Angeles County Jail as to whether the Jail has complied with the 2002 MOA regarding the delivery of mental health services. Specifically, the DOJ referenced the finding of the MOA reflecting allegations of inadequate suicide prevention for prisoners. In addition, the DOJ correspondence emphasized the "recent increase in suicides."

47.     On June 4, 2014, the DOJ sent to County Counsel a compliance letter on the 2002 MOA about treatment of the mentally ill. After performing an extensive investigation – reflecting four completed suicides in 2012, ten completed suicides in 2013, and one completed suicide in January, 2014 – the Department of Justice found: "Based on our review, we conclude that the County violates the Eighth and Fourteenth Amendments of the United States Constitution by failing to provide adequate mental health services and protect prisoners from serious harm and risk of harm at the Jails due to inadequate suicide prevention practices. Consistent with the practice of our longstanding investigation of the Jails pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §1997, we write to update our conclusions of September 5, 1997, regarding mental health treatment and suicide prevention at the Jails and to discuss the minimum remedial steps necessary to address the identified deficiencies."

48.     The Department of Justice concluded that "Los Angeles County, including the Sheriff's Department and the Department of Mental Health, violates prisoners'

constitutional right to adequate suicide prevention practices, which is required as part of the Jails' legal obligation to meet the serious mental health care needs of all prisoners. These deficiencies pose a substantial risk of serious harm to prisoners in violation of the Fourteenth Amendment's due process protections for pretrial detainees, as well as the Eighth Amendment's protections for those convicted of a criminal offense."

49.     The June 4, 2014, DOJ letter articulated numerous systemic failures of Defendant COUNTY to maintain constitutionally adequate mental health care which directly applied to the unconstitutional treatment of Decedent, Mark Anthony Carrillo and his untimely death. These conditions, include, but are not limited to:

a. There was inadequate mental health care to prevent prisoners from becoming suicidal, to identify suicidal prisoners, or to prevent prisoners from going into crisis.

b. The Los Angeles County Jails do not provide appropriate custodial supervision for prisoners, resulting in repeated lapses in the Jails' safety checks, creating a serious risk of harm to prisoners from suicidal behavior;

c. The general lack of adequate supervision is especially troubling given the hazardous conditions, including known suicide risks that exist in nearly every housing unit in the jails. Prisoners with mental illness are housed in conditions that present, rather than prevent, a risk of suicide. Deputies do not consistently perform timely, thorough safety checks.

d. Custody staff of the LASD, the Medical Services Bureau, and the Department of Mental Health had inadequate intake screening and identification of individuals with mental illness and are at risk for suicide, ignoring significant mental health history;

e. Incomplete information collection and communication in intake assessments and evaluations: Although LASD conducts screenings to identify prisoners who may be at risk for suicide or self-harm, screenings are often not filled out completely or adequately incorporated into the prisoner's electronic medical record. As a result,

intake screening is insufficient to identify and protect individuals at risk for suicide;

f. Custody staff of the LASD, the Medical Services Bureau, and the Department of Mental Health often operate in "silos" when addressing suicide incidents and risks, resulting in a lack of communication, or miscommunication between representatives of these entities, causing a critical breakdown in the custody and care of the prisoners in the Jails;

g. Insufficient mechanisms to ensure that any relevant information regarding a prisoner's medical or mental health status or history is communicated to medical and mental health staff for inclusion in the prisoner's electronic medical record;

h. Despite the onslaught of suicide attempts in the years preceding Mark Anthony Carrillo's death, there was a persistent failure of the Jails' command staff to critically review the policies, staffing and custody practices to the suicides and the suicide attempts that were occurring;

i. The prevalence of hazardous conditions within the Jails which promote the risk of suicide;

j. The practice of placing potentially suicidal inmates into single cells by custody staff without consulting prisoner classification or mental health staff;

50.    But in addition to listing the persistent flaws in the suicide prevention practices and the treatment of mentally ill inmates in Los Angeles jails, in illustrating the severe failure of Defendant COUNTY to comply with the 2002 MOA, and its failure to meet the standard of care required by the Eighth and the Fourteenth Amendments of the United States Constitution, the DOJ highlighted specific inmates whose suicides occurred while in custody as examples of Defendant COUNTY's substandard, unconstitutional treatment of inmates with mental health illness and who were at risk of suicide. The inmates referenced as examples in the June 4, 2014 DOJ letter demonstrated how Defendant COUNTY -specifically its Custody staff of the LASD, the Medical Services Bureau, and the Department of Mental Health – all contributed to the prevalence of

inmate suicides in the Los Angeles County Jails facilities from 2012 through 2014. Beyond these flagrant conditions which contributed to Mark Anthony Carrillo's suicide, the June 4, 2014 DOJ letter also emphasized the failure of the COUNTY to critically review an inmate's suicide after it occurred, thereby ratifying the prior unconstitutional conduct and furthering the likelihood of similar misconduct in the future:

> "The many errors in the critical incident reviews, errors of both omission and inaccurate recording, create suspicion with regard to their veracity. For example, the final critical incident review for the suicide of Dean is marked by errors in facts and appears to be the product of cutting and pasting from another suicide that occurred prior to Dean's death. Inconsistencies and errors in his age, his record of incarceration in the Jails, and in the dates of the critical incident review meetings make the entire review document questionable. Apparently none of these errors were noted by members of the review committee, as they remained in the critical incident review three months after Dean's death."

51.    The actions and inactions of the LASD, the Department of Mental Health and the Medical Services Bureau set forth in the preceding paragraphs were known or should have been known to the policy makers responsible for the Defendant COUNTY and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and / or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training was obvious.

52.    The actions and omissions of Defendant COUNTY and its Sheriff's Department, Department of Mental Health, and Medical Services Bureau set forth in the preceding three paragraphs were a motivating force behind the violations of Mark Anthony Carrillo's constitutional rights as set forth in this complaint.

53.    On August 5, 2015, Defendant COUNTY and the United States Department of Justice entered a settlement agreement concerning the provision of mental health care at the Los Angeles County Jail. The Settlement Agreement was specifically intended to ensure measures to protect prisoners from conditions that "place them at unreasonable

risk of harm from suicide, self-injurious behavior, or unlawful injury by others, in accordance with their constitutional rights."

54. The settlement agreement required, inter alia, that the COUNTY and LASD commence a systemic review of all prisoner housing, beginning with FIP, HOH, Moderate Observation and single-person discipline cells, to identify and address suicide hazards, using a nationally-recognized audit tool for review.

## V. PARTICIPATION, STATE OF MIND AND DAMAGES

55. All Defendants acted without authorization of law.

56. Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each Defendant ratified, approved or acquiesced in the violations alleged herein.

57. As joint actors with joint obligations, each Defendant was and is responsible for the failures and omissions of the other.

58. Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiffs' rights.

59. Each Defendant acted with a deliberate indifference to or, reckless disregard for, an accused's rights for adequate mental health care in a custodial facility.

60. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, DECEDENT, Mark Anthony Carrillo suffered great fear, physical and mental suffering, anguish, confusion, anxiety, nervousness, and ultimately, loss of life during the time period in which LASD, Department of Mental Health and the Medical Services Bureau failed to provide appropriate psychiatric care and treatment for his urgent psychiatric condition, and in particular, suffered acute and unmitigated mental and physical suffering during the hours preceding his death on January 23, 2021.

61. As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Plaintiffs have suffered great mental

and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiffs to sustain damages in a sum to be determined at trial.

62. As a further result of the conduct of each of these Defendants, Plaintiffs have been deprived of familial relationships, including the loss of their husband and father, Mark Anthony Carrillo, and the emotional impact on their family unit as a whole.

63. The aforementioned acts of the Defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard or with deliberate indifference to the constitutional rights of the Plaintiffs, entitling Plaintiffs to exemplary and punitive damages from each defendant other than Defendant COUNTY in an amount to be proven at the trial of this matter.

64. By reason of the above described acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiffs that they might vindicate the loss and impairment of his rights, and by reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure §1021.5 and any other applicable provision of law.

## FIRST CLAIM FOR RELIEF
### DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. §1983
### DELIBERATE INDIFFERENCE TO
### SERIOUS MEDICAL NEEDS AND SAFETY
### (Against All Defendants and DOES 1-20, Except Defendant COUNTY)

65. Plaintiffs reallege paragraphs 1 through 64, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

66. Plaintiffs are informed and believe, and based on such information and belief, allege that Defendants acted with deliberate indifference for Mark Anthony Carrillo's serious medical needs and safety, in that they:

a. Failed to provide adequate psychiatric assessment, treatment and intervention; inappropriately assigned Mr. Carrillo to the Men's Central Jail instead of the appropriate mental housing unit of the Twin Towers Correctional Facility despite clear indications that he required more intensive treatment and supervision;

b. Inappropriately assigned him to a one man cell in the Men's Central Jail despite clear indications that his rapidly deteriorating mental condition required him to be housed in a mental health facility; ignored and/or failed to reasonably monitor, to provide security, and to prevent Mark Anthony Carrillo from committing harm to himself while housed in Men's Central Jail;

c. Failed to provide medically indicated psychiatric care and assessment; and

d. Ignored his serious but treatable mental health condition.

Due to Defendants' deliberate indifference to the serious nature and life threatening condition of Mark Anthony Carrillo, and their failure to timely intervene to provide reasonable security, monitoring and safety, and psychiatric medical intervention necessary to prevent his efforts to harm himself, Mark Anthony Carrillo suffered preventable serious injury and harm by hanging himself on January 23, 2021.

67. Mark Anthony Carrillo was subjected to deprivation of rights by these Defendants and DOES 1 through 20, and each of them, acting under color of law and of statutes, ordinances, regulations, customs and usages of the Law of United States, State of California, which rights included, but are not limited to, privileges and immunities secured to Mark Anthony Carrillo by the Fourteenth or Eighth Amendments to the United States Constitution and laws of the United States, and particularly: a) his right to access to mental health and medical care and treatment for his serious but treatable condition; b) his right to adequate, reasonable security, monitoring, supervision, classification and housing for his mental health and medical disabilities, each of which was also a cause of his serious injury and harm.

68. Plaintiffs MARLENE OROZCO, MARK CARRILLO, JR., JOSHUA CARRILLO, M.M.C., J.J.C., and A.F.C. allege that these Defendants' wrongful conduct legally caused a deprivation of their constitutionally protected liberty interest in familial companionship, love and society of their father, all to his damage in an amount to be proven at trial according to proof.

## SECOND CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS -- 42 U.S.C. §1983

### (Against Defendant COUNTY) – *MONELL* VIOLATIONS

69. Plaintiffs reallege paragraphs 1 through 68 as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

70. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants COUNTY OF LOS ANGELES, with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of Mark Anthony Carrillo, engaged in the unconstitutional conduct and omissions.

71. Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, Defendant COUNTY OF LOS ANGELES, Los Angeles Sheriff's Department, and Los County Department of Mental Health, with deliberate indifference, and/or conscious or reckless disregard to the safety and constitutional rights of Mark Anthony Carrillo, and other inmates with severe mental health conditions, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied the policies, practices and customs set forth C, above, including, but not limited to: failure to provide adequate mental health services; failure to mitigate or eliminate known environmental, suicide hazards prevalent throughout jail housing areas, including housing areas to which inmates with serious mental illness are assigned (including jumping hazards present in tiered HOH housing units); failure to provide appropriate custodial supervision of inmates with mental health conditions – despite known suicide hazards; failure to ensure that mental health housing and treatment spaces meet minimum safety design standards for facilities in which persons with serious mental illness are held; failure to ensure

sufficient treatment space and staffing necessary to provide adequate mental health care; inadequate intake screening and assessment for housing placement; inadequate monitoring and assessment of inmates' mental health conditions; insufficient mechanisms to ensure communication of relevant information between custodial, medical and mental health staff; failure to ensure appropriate suicide intervention measures; and, failure to ensure adequate training of correctional staff in suicide prevention and responding to mental health care crises.

72. Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, individual Defendants' wrongful conduct was the result of policies, practices and customs to subject inmates of the Los Angeles County Jails to unconstitutionally inadequate treatment for inmates with mental health conditions; permit and promote unsafe conditions for inmates leading to a heightened risk of suicide; and cover-up incidents of unconstitutional behavior by members of its LASD custody staff, Medical Services Bureau and Department of Mental Health.

73. At all times herein mentioned, the County of Los Angeles and its Sheriff's Department, the Medical Services Bureau, and the Department of Mental Health authorized and ratified the wrongful acts of the individual Defendants. The actions and inactions of the LASD including it custody staff, the Medical Services Bureau, and the Department of Mental Health were known or should have been known to the policy makers responsible for Los Angeles COUNTY, and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious.

74. The actions of the LASD including it custody staff, the Medical Services Bureau, and the Department of Mental Health set forth herein were a motivating force behind the violations of Plaintiffs' and Mark Anthony Carrillo's constitutional rights as set forth in this complaint.

75.    As a direct and proximate result of Defendant COUNTY OF LOS ANGELES' policies, practices, and customs, Plaintiffs sustained injury and damage as proved.

76.    As a result of Defendants', and each of their, violations of Plaintiffs' and Mark Anthony Carrillo's constitutional rights as set forth herein, Plaintiffs were damaged as alleged above.

## THIRD CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983

### FAILURE TO SUPERVISE, TRAIN AND TAKE CORRECTIVE MEASURES CAUSING CONSTITUTIONAL VIOLATIONS

### (Against Supervisory Defendants and DOES 1-20 Except Defendant COUNTY)

77.    Plaintiffs reallege paragraphs 1 through 76, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

78.    Plaintiffs are informed and believe and thereon allege that Defendants VILLANUEVA and DOES 1-20 knew, or in the exercise of reasonable care, should have known of a history and propensity and pattern at the time of this incident for employees of the Los Angeles County Jail to fail to provide reasonable security, monitoring and supervision of inmates such as Mark Anthony Carrillo; to fail to comply in implementing policies and procedures or ensuring the enforcement thereof; to fail to train and ensure that deputies, employees and medical care providers provide reasonable security and monitoring of inmates, such as Mark Anthony Carrillo; and that they provide prompt and competent access and delivery of mental health attention and intervention when inmates, such as Mark Anthony Carrillo, were having a mental health crisis requiring prompt intervention. Defendants' disregard of this knowledge or failure to adequately investigate and discover and correct such acts or failures to act was a moving force which caused the violation of Plaintiffs' constitutional rights.

79. Plaintiffs are informed and believe and thereon allege that prior to the incident alleged herein, Defendants VILLANUEVA and DOES 1-20, acting under the color of their authority as supervisory officers of deputies, counselors, physicians, nurses, staff and all mental health and medical care providers, and in the course and scope of their employment as such, committed similar acts of:

    a. Failure to provide access to and delivery of mental health and medical care and treatment for inmates at Los Angeles County with known mental disabilities;

    b. Failure to provide adequate housing and properly classify inmates in the Los Angeles County Jails so that they would have access to and delivery of indicated mental health and medical care;

    c. Failure to provide adequate and reasonable monitoring and housing for inmates that present a risk of suicide to prevent mental health disasters such as attempted suicides and suicides;

    d. Failure to supervise their subordinates to ensure that staff, deputies and employees were implementing and complying with implementing policies and procedures to ensure the reasonable security and safety of inmates;

    e. Discriminating against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

80. Plaintiffs are further informed and believe and thereon allege that Defendants VILLANUEVA and DOES 1-20, knew, or in the exercise of reasonable care should have known, of this pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these Defendants and DOES 1-20 had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate or instruct deputies, counselors, physicians and nurses, and/or agents or employees, and to retain deputies, counselors, physicians and nurses who had a history of

inappropriate conduct, and as a result Mark Anthony Carrillo was harmed in the manner threatened by the pattern or practice.

81. At all times herein mentioned, and prior thereto, Defendants had the duty to perform the following, and violated that duty:

    a. To train, supervise, and instruct deputies, counselors, nurses, physician assistants, physicians, and other agents to ensure that they respected and did not violate federal and state constitutional and statutory rights of inmates;

    b. To objectively investigate incidents of in-custody injury, deaths, suicides and suicide attempts, inadequate classification and contraindicated housing, and to take remedial action;

    c. To provide access to and delivery of mental and medical health care, intervention, treatment, follow-up, and attention to injured, ill or potentially suicidal inmates, the lack of which resulted in serious injury or loss of life, and to provide access and delivery of competent mental and medical health care;

    d. To periodically monitor an inmate's serious mental health and medical condition and suicide prevention, the lack of which may result in serious injury or loss of life;

    e. To periodically monitor the quality and adequacy of mental health and medical care, attention and treatment provided to mentally ill inmates;

    f. To periodically monitor the competency of medical and custodial staffing to ensure that custodial deputies and staff were complying with reasonable security to inmates with mental health disabilities at Los Angeles County Jails;

    g. To periodically monitor the classification and housing of mentally ill inmates to ensure they have reasonable security and safety and are properly housed, and not housed with or exposed to persons with known dangerous propensities;

h. To comply with the statutory guidelines and regulations enacted for the protection of inmates held in a custodial setting;

i. To discipline and to establish procedures to correct past violations, and to prevent future occurrences of violation of constitutional rights of inmates, by not condoning, ratifying, and/or encouraging the violation of Mark Anthony Carrillo's and other inmate's constitutional rights;

j. To periodically train custodial staff and counselors on understanding, recognizing, reporting and responding to issues of inmates' mental health care and treatment; and

k. Not to discriminate against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

82. As a legal result of the conduct of Defendant VILLANUEVA and Does 1-20, as described above, Plaintiffs were damaged as alleged herein and as set forth above.

## FOURTH CLAIM FOR RELIEF

### NEGLIGENCE

### (Against All Defendants and DOES 1-20, Except Defendant COUNTY)

83. Plaintiffs reallege paragraphs 1 through 82, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

84. Defendants and DOES 1-20, had a duty to provide reasonable security and render access and delivery of mental and medical care, treatment and/or emergency services to Mark Anthony Carrillo for his mental health condition but breached their duty and were negligent in the performance of their duties and this negligence caused the death of Mark Anthony Carrillo.

85. Defendants and DOE supervisors 1-20, acting within the course and scope of their employment with the LASD, the Department of Mental Health and the Medical Services Bureau had a duty to assure the competence of their employee/agents

Defendants and DOES 1-20, but breached their duty and were negligent in the performance of their duties by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, evaluating the competency and retaining their Defendant deputies, counselors, physicians and/or employees and/or agents. This breach of the duty of careful selection, hiring, training, review, supervision, periodic evaluation of the competency, and retention of such officers, counselors and other staff created an unreasonable risk of harm to persons such as Mark Anthony Carrillo.

86. The individually named Defendants breached their duty of care to observe, report, monitor and provide reasonable security regarding Mark Anthony Carrillo's condition and failed to prevent his suicide.

87. As a direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants, and each of them, and as a result of their breach of duty of care to Mark Anthony Carrillo, he was injured due to a serious but treatable mental health condition and Plaintiffs have suffered the damages as alleged above.

88. As a legal result of the aforesaid negligence and unskillfulness of Defendants, Mark Anthony Carrillo's trauma and injuries and/or suicidal ideation condition did not receive timely, appropriate and indicated intervention and treatment and his condition worsened and resulted in his suicide, and he suffered serious injury and harm as a legal cause of the negligent conduct of Defendants, thereby causing damage as alleged above.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA GOV'T CODE § 845.6

### (Against All Defendants Except Defendant COUNTY)

89. Plaintiff realleges paragraphs 1 through 88, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

90. By virtue of the foregoing, Defendants, including but not limited to representatives of the LASD, the Department of Mental Health the Medical Services Bureau knew or had reason to know that Mark Anthony Carrillo needed intensive

medical care and that he had serious and obvious mental and medical conditions that put the staff on notice that he should have had his medical and mental condition closely monitored; that on or before January 23, 2021, he needed immediate medical care and was not given such care. The failure to provide immediate medical care and mental health care, where his health and mental condition were deteriorating, proximately caused his suicide.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF AMERICANS WITH DISABILITIY ACT (ADA), TITLE II, 42 U.S.C. §12101 et seq., THE REHABILITATION ACT, 29 U.S.C. §794, AND CALIFORNA UNRUH ACT, CAL. CIVIL CODE §§51, et seq.

**(Against All Defendants and Defendant COUNTY)**

91.     Plaintiffs reallege paragraphs 1 through 90, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

92.     Mark Anthony Carrillo was a "qualified individual," with a mental impairment that substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973 (RH), 29 U.S.C. §794 and Cal. Civ. Code §51, et seq., and qualified as an individual with a disability under California law, and he met the essential eligibility requirements of the County of Los Angeles' and Los Angeles Sheriff's Department's programs to provide mental/medical health care services for its inmate patients in the Los Angeles Sheriff's Department. Further, former Sheriff Lee Baca had signed an agreement with the U.S. Department of Justice to ensure that the mentally ill in his jails received indicated and required psychiatric care and treatment, that they would be protected from self-harm through suicide.

93.     Defendant Los Angeles COUNTY and its jails and mental health services are a place of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973, and

Cal. Civ. Code §51, seq., explicated by the regulations promulgated under each of these laws.

94. Defendant Los Angeles County mental health services "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b).

95. Under the ADA, Los Angeles County is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities. . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

96. Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problems." 42 U.S.C. §12101(a)(2).

97. Los Angeles COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182 (a).

98. Defendant Los Angeles COUNTY receives federal financial assistance for their jails, and therefore must comply with the mandates of the Rehabilitation Act, §504, which specifies that "program or activity" means all of the operations of … A department, agency, special purpose district, or other instrumentality of a State or of a local government.

99. Defendant Los Angeles COUNTY and other Defendants violated the ADA and the RA and Cal. Civ. Code §51, et seq., and deprived Mark Anthony Carrillo and Plaintiffs of their federally and state protected rights by:

a. creating and maintaining a number of programs and services to protect the mentally disabled that operate in conjunction with Los Angeles COUNTY's jails;

b. failing to provide services or accommodate Mark Anthony Carrillo with access to the programs and services of Los Angeles COUNTY'S designated mental health facilities within Los Angeles County Jails for persons who qualify for access and services under California and federal law;

c. failing to provide services or accommodate Mark Anthony Carrillo as indicated and with appropriate classification, housing and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled;

d. failing to provide reasonable accommodations to people in custody with mental disabilities at their jails, and providing instead quality of care and service that is different, separate, and worse than the service provided to other individuals with the same disabilities;

e. failing to properly train its deputies, medical and mental health staff, employees and officers on how to peacefully respond, treat, and interact with disabled persons, such as Mark Anthony Carrillo; and

f. failing to comply with the U.S. Department of Justice requirements regarding care, treatment and security to persons with mental disabilities, resulting in discrimination against Mark Anthony Carrillo, under the ADA and RA.

100. Mark Anthony Carrillo was denied the benefits of the services, programs, and activities of Los Angeles COUNTY which deprived him of mental health and medical health programs and services which would have provided the delivery of treatment, follow-up and supervision. This denial of programs and services was the result of his disability in that he was discriminated against because he was mentally ill and "gravely disabled," in that he suffered from conditions in which a person, as a result of a

mental disorder, is unable to provide for his basic personal needs and to protect himself from self-harm. Defendants' failure to train their employees, and the denial of mental and medical health care, treatment, follow-up, training, supervision was result in the violation of Plaintiffs' constitutional rights.

101.    As a legal result of the acts and misconduct of the Defendants and each Defendant complained of herein, Mark Anthony Carrillo died and Plaintiffs have suffered, are now suffering and will continue to suffer damages as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs MARLENE OROZCO, MARK CARRILLO, JR., JOSHUA CARRILLO, M.M.C., J.J.C., and A.F.C. request relief on their own behalf, and on behalf of the estate of Mark Anthony Carrillo, as follows, and according to proof, against each Defendant:

1.    For general and compensatory damages against each Defendant, jointly and severally, in an amount according to proof;

2.    Special damages against each Defendant, jointly and severally, in an amount according to proof;

3.    For punitive and exemplary damages against each Defendant, except the COUNTY OF LOS ANGELES, in an amount according to proof;

4.    For costs and reasonable attorney's fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure § 1021.5 and as otherwise authorized by statute or law; and

5.    For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

///

///

///

# **REQUEST FOR JURY**

Plaintiffs hereby request a jury trial in this action.

Respectfully submitted,

Dated: July 6, 2021

/s/
MICHAEL S. CARRILLO